# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IRMA ROSAS )
_____ )
_____ )
_____ )
_____ )
(Name of the plaintiff or plaintiffs) )
)
v. )
)
RK KENZIE CORPORATION )
/dba/ McDONALD'S #7069 )
)
_____ )
(Name of the defendant or defendants) )

19CV5
JUDGE BLAKEY
MAG. JUDGE KIM

CIVIL ACTION

NO._____

**FILED**

JAN 02 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is   IRMA ROSAS   of the

county of   COOK   in the state of   ILLINOIS   .

3. The defendant is   R.K. KENZIE CORP. /dba/ McDONALDS #7069   , whose

street address is   9115 S. CICERO AVE   ,

(city) OAKLAWN (county)   COOK   (state)   ILLINOIS   (ZIP)   60453

(Defendant's telephone number)   (708) – 243. 1075

4. The plaintiff sought employment or was employed by the defendant at (street address)

   6430 S. CICERO AVE   (city)   CHICAGO

(county)   COOK   (state) ILLINOIS (ZIP code)   60638

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

   (a) ☐    was denied employment by the defendant.

   (b) ☐    was hired and is still employed by the defendant.

   (c) ☑    was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,
(month) APRIL , (day) 10 , (year) 2018 .

7.1   *(Choose paragraph 7.1 or 7.2, do not complete both.)*

     (a) The defendant is not a federal governmental agency, and the plaintiff [*check*

     *one box*] ☐ *has not*      filed a charge or charges against the defendant
               ☑ *has*

asserting the acts of discrimination indicated in this complaint with any of the following
government agencies:

   (i)    ☑ the United States Equal Employment Opportunity Commission, on or about
(month) SEPTEMBER (day)_____ (year) 2018 .

   (ii)    ☐ the Illinois Department of Human Rights, on or about
(month)_____ (day)_____ (year)_____.

  (b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached.  ☑ YES.    ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.
     (SEE ATTACHMENT #1)
It is the policy of both the Equal Employment Opportunity Commission and the Illinois
Department of Human Rights to cross-file with the other agency all charges received. The
plaintiff has no reason to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and
    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the
    defendant asserting the acts of discrimination indicated in this court complaint.

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

☐     Yes (month)_____ (day)_____ (year) _____

☐     No, did not file Complaint of Employment Discrimination

(b)     The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)     Attached is a copy of the

    (i) Complaint of Employment Discrimination,

    ☐ YES     ☐ NO, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

    ☐ YES     ☐ NO, but a copy will be filed within 14 days.

8.     *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐     the United States Equal Employment Opportunity Commission has not issued

    a *Notice of Right to Sue.*

    (b) ☑     the United States Equal Employment Opportunity Commission has issued a

    *Notice of Right to Sue*, which was received by the plaintiff on

    (month)  OCTOBER  (day)  31  (year)  2018  a copy of which

    *Notice* is attached to this complaint.

9.     The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

    *those that apply*]:

    (a) ☐     Age (Age Discrimination Employment Act).

    (b) ☐     Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☑ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):_____

_____

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

   (SEE   ATTACHMENT  #2)

_____

_____

_____

_____

_____

14.    **[*AGE DISCRIMINATION ONLY*]**  Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☑ YES    ☐ NO

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

   (a) ☐    Direct the defendant to hire the plaintiff.

   (b) ☐    Direct the defendant to re-employ the plaintiff.

   (c) ☐    Direct the defendant to promote the plaintiff.

   (d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e) ☐    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f) ☐    Direct the defendant to (specify): _____

_____

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

(g) ☑    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_Irma Rosas_

(Plaintiff's name)

IRMA ROSAS

(Plaintiff's street address)

6333 S. LAVERGNE AVE

_____

(City) CHICAGO    (State) IL    (ZIP) 60638

(Plaintiff's telephone number) (773) - 627 · 8330

Date: 01·02·19

6

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**ATTACHMENT #1**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Irma Rosas**<br>**6333 S. Lavergne Ave.**<br>**Chicago, IL 60638** | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 440-2018-05886 | **Kara Mitchell,**<br>**Investigator** | | **(312) 869-8134** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Julianne Bowman,**
**District Director**

10/31/18

*(Date Mailed)*

Enclosures(s)

cc:  **McDonald's**
**C/O Kristen Jones**
**Goldberg Kohn, LTD**
**55 E. Monroe Street, Suite 3300**
**Chicago, IL 60603**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2018-05886 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Irma Rosas | | 1973 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6333 S. Lavergne Ave., Chicago, IL 60638 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MCDONALD'S | Unknown | (773) 284-8996 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6430 S. Cicero Ave., Chicago, IL 60638 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

RECEIVED EEOC

DISCRIMINATION BASED ON (Check appropriate box(es).)

| ☐ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|

| ☐ RETALIATION | ☐ AGE | ☒ DISABILITY | ☐ GENETIC INFORMATION |
|---|---|---|---|

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — OCT 02 2018    Latest — 04-10-2018

CHICAGO DISTRICT OFFICE

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent on or about November 4, 2017 and my position was Crew Member. During my employment, I complained to Respondent. Subsequent to my complaint, I was notified of my poor performance. Respondent was aware of my disability and need for a reasonable accommodation. On or about April 10, 2018, I was discharged.

I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 4/24/18      _____<br>Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**ATTACHMENT #2**

**RESPONSE TO "13. The facts supporting the plaintiff's claim of discrimination are as follows:"**

a.       On or about November 30, 2017, Plaintiff began employment with Def. Kenzie Corporation's McDonald's Store #7069 ("Kenzie Corp.") as a Crew Member.

b.       On January 03, 2018, Plaintiff sent a certified letter to Def. Kenzie Corp. with several complaints of their store #7069 which centered on 1) breaks/lunches, 2) cash handling procedures, 3) hours scheduled, 4) managers, and 4) the physical environment. Def. Kenzie Corp. received said letter on January 5, 2018. (**see** Attachment 3).

c.       On January 18, 2018, Plaintiff met with Def. Kenzie Corp. (Randy Conn, Owner/Operator ("Conn"); Stephanie Marquardt, Director of Human Resources; Candi Geringer, Director of Operations; and Carrie Szarkowicz, Supervisor) at store # 7069 to discuss the complaints in the letter.

d.       Besides highlighting how Plaintiff witnessed how a male employee would inappropriately touch young female employees, she also stressed how none of the dozen or so managers at store #7069 were African American. One African American woman had been working at the location for 18 years, another for 16 years, and a third one for 7 years but none had ever been promoted to managers.

e.       Def. Kenzie Corp. offered resolutions to Plaintiff's complaints both in the letter and others brought up at the meeting. Plaintiff alleges that Def. Kenzie Corp. encouraged her to contact them if she had other concerns. Stephanie Marquardt, Director of Human Resources, gave Plaintiff her business card for such purpose.

f.       Before work on February 05, 2018, Plaintiff contacted Conn/Def. Kenzie Corp. to complain about her schedule and the automated drink machine at her station. She alleged that it continued over- and under-producing drinks and interfering with her ability to perform her duties, and increasing the level of pain in her hands. Plaintiff asked Conn/Def. Kenzie Corp. to fix it.

1

g.  During her shift on February 05, 2018, Plaintiff met with Conn/Def. Kenzie Corp. to discuss her schedule and the machine. She alleges that Conn/Def. Kenzie Corp. said that her assessment of the machine was "inaccurate" and that "it works properly for everybody else and it's operational procedures that [Plaintiff] have to work on". She further alleges that Def. Randy Conn/Def. Kenzie Corp. said, "...if you want to work in a perfect world, you [the Plaintiff] shouldn't work for us". Plaintiff alleges that Conn said it several times and that several times she asked if he was firing her; the last time he said it, he said that "[he had] to check first".

h.  Then on February 16, 2018, Carrie Szarkowicz ("Szarkowicz")/Def. Kenzie Corp. presented Plaintiff with a "Disciplinary Action Form." The Form delineated at least fifteen (15) examples of how Def. Kenzie Corp. alleged that Plaintiff "created a toxic work environment." They were:

- "You stand around and watch people do their jobs (ignoring your own tasks), and then challenge them on the petty details of their performance;
- You have refused to stock condiments;
- Refused to help clean;
- Cleaned the same spot over and over to avoid cleaning other areas of the store;
- Refused to make refreshments like sweet tea and iced coffee;
- Refused to help with the fry station and fry machine;
- Failed to operate the pop machine correctly;
- Have been constantly changing your availability;
- Have repeatedly refused to perform tasks, stating you 'did not know how,' despite having received the same extensive training as everyone else;
- 1/14/18: refused to clean the fry station because 'the water was cold;'
- 1/17/18: became combative with a manager, after she asked you to take a receipt out to a customer's car;
- 1/18/18: clocked out without permission and before completing your tasks;
- 1/18/18: took an inordinate amount of time to count your drawer;
- 1/18/18: after a customer ordered additional sauces for 25 cents, you slammed a quarter on the counter and disrespectfully told the manager: 'Here's your money;' and
- 2/2/18: pushed into another employee."

Plaintiff alleges that she told Szarkowicz that she wanted a meeting with her "accusers."

i.  Plaintiff alleges that the accusations by Def. Kenzie Corp. either required contextualization and/or were false.

2

j.      Plaintiff further alleges that managers with Def. Kenzie Corp./#7069 never discussed her lack of work ethic nor presented her with a Disciplinary Action Form for a lack of work ethic *prior* to her sending the certified letter (Jan. 03/Jan. 05), meeting with Randy Conn/Def. Kenzie Corp. and its staff (Jan. 18), and then meeting with Randy Conn/Def. Kenzie Corp. (Feb. 5). On the contrary, whenever the Plaintiff was not scheduled to work and she contacted Olivia to make herself available to work, Olivia would call her in immediately.

k.      Plaintiff had not been feeling well and had called in sick to work on February 9th and 19th. On February 12th—before the Disciplinary Action Form was issued by Def. Kenzie Corp.—Plaintiff had called her doctor's office and made an appointment for February 20th.

l.      On February 20, 2018, Plaintiff's doctor provided her with a "Return to Work" certificate that included medical restrictions. They were: "No heavy lifting greater than 5 pounds due to underlying medical conditions. Avoid excessive use of hands. Please allow patient to use restroom as needed." That same day, Plaintiff sent the Certificate to Conn/Def. Kenzie Corp. to his e-mail address.

m.      On February 23rd, Szarkowicz/Def. Kenzie Corp. presented Plaintiff with her original Return to Work certificate, seven (7) job descriptions and an explanation of responsibilities, and a "Medical Inquiry form." Plaintiff alleges that Def. Kenzie Corp. informed her that she could not return to work until her doctor filled-out the form, and then instructed her to punch out and leave for the day.

n.      As someone with Medicaid insurance, Plaintiff's appointment to see an orthopaedic specialist for her worsening hand pain was until May 21, 2018.

o.      On March 31, 2018 at 3:03 PM, Plaintiff sent Szarkowicz the following text message: "I am still in the process of obtaining your medical inquiry form."

p.      On April, 05, 2018 at 9:47 AM, Plaintiff sent Szarkowicz the following text message: "I intend to return to work and medical evaluation is still not complete. As such, I cannot provide you with the medical inquiry form and schedule a meeting with you by April

3

10th." At 10:05 AM Szarkowicz replied, "I will update Candi [Geringer-Garza, Director of Operations] with your response." Plaintiff responded, "Great and tell [Candi] that the next letter she sends should include a direct number where I can call her."

      q.      On April 10th, Plaintiff received a letter from Candi Geringer-Garza, Director of Operations, informing her that her position was no longer available. In short, Plaintiff had been terminated.

      r.      Plaintiff alleges that Def. Kenzie Corp. retaliated against her when she complained about the working conditions at its store #7069, which included complaints of sexual harassment and racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

      s.      Furthermore she alleges that Def. Kenzie Corp. discriminated against her because of her disability when it refused her the time necessary to obtain the medical inquiry form that it requested of her, in violation of the Americans with Disabilities Act of 1990, as amended.

      t.      While Plaintiff could not control when she could see an orthopaedic specialist, she alleges that Def. Kenzie Corp. had the capability of controlling for her 10-hour/week schedule. Def. Kenzie Corp. invited employees from other McDonald's locations to work at store #7069 as needed. Furthermore, Def. Kenzie Corp. went through a complete remodel where store #7069 was closed from early September to late November 2018.

4

**ATTACHMENT #3**

Irma Rosas
6333 S. Lavergne Avenue
Chicago, Illinois 60638
773-299-8365
irosas@aol.com


January 03, 2017


Randy & Kathleen Conn,
D.B.A. RCKC Corporation, RKMK Corporation, Konnz Corporation, Connz
Corporation, R.K. Kenzie Corporation, Zeeken Corporation,
Conn Group Corporation, Jacmar Corporation
9115 S. Cicero Ave, Suite 200
Oak Lawn, IL 60453


Dear Mr. & Mrs. Conn,


December 30th marked the 30th day of my probationary period as a crewmember
with your McDonald's #7069 location at 6430 S. Cicero Ave, Chicago, IL 60638. It is in
this capacity that I write the following complaints.

On November 27, 2017, I received the orientation packet ("policy packet") dated
September 1, 2017 for all your McDonald's locations. I refer to the policy packet by page
number.

I have several complaints. The first complaint relates to Breaks and Meals. The
packet states: "5. If you work under 6 hours[,] you are not eligible for a break. Anyone
working over 6 hours must take a 30 minute unpaid meal break." (p. 2). Then under
**Other Information Regarding Breaks**, it states: "4. Crew working less than 6 hours do
not get a break." (ibid). In short, crew working under 6 hours do not get a break and crew
working over 6 hours must take a 30 minute unpaid break.

On Dec. 02-03, I worked from 10 p.m.-5:18 p.m. On Dec. 09-10, I worked from
10 p.m.-5:24 a.m. On Dec. 16-17, I worked from 10 p.m.-5:34 a.m. On Dec. 23-24, I
worked 10 p.m.-5:26 a.m. On Dec. 31-Jan. 1, I worked 10 p.m.-5:25 a.m. Each of these
days I worked over 7 hours and I received no breaks or unpaid meal breaks.

On Dec. 13, I contacted Olivia, the Manager, to check whether I was needed to go
in to work. She called me and said to go in to work at my earliest convenience. I worked
5:01 p.m.-10:19 p.m. Yasmin, the Assistant Manager ("AM") on duty, told me that I had
to take an unpaid meal break. On Dec. 15, I again contacted Olivia to check whether I
was needed to go in to work. She called me in to work again. I worked from 3:09 p.m.-

1

8:38 p.m. Again, Fausto, the AM on duty, told me that I had to take an unpaid meal break. I did not receive any breaks and I was not eligible for unpaid meal breaks both days.

On Dec. 28, I was scheduled to work from 11 a.m.-5:30 p.m. I was told to take an unpaid meal break and then sent home early at 5 p.m. As such, I did not work more than 6 hours.

The second complaint relates to cash drawers. In the month that I have worked at McDonald's, I have been responsible for cash drawers. The top of page 20 of the policy packet states the procedures for verifying drawers. However the times that I have received a drawer, the procedures have never been followed.

Assistant managers have never made me sign a slip verifying the drawer has $200 in it. During my shift, AMs and other crewmembers have used my register. During my shift, AMs have taken my drawer without me counting the money. During my shift, AMs have returned my drawer to the register without me counting the money. At the end of my shift, I have not signed any slip verifying the drawer has $200 in it.

On Dec. 28, Angela instructed me to use Kenya's cash drawer.

To this day, I still do not have an individual pin number for the smart safe.

On Dec. 16-17, I worked with Yazmin, the AM on duty. I was in charge of my register, the drink station, the fry station, restocking, and cleaning. Yazmin expected me to do everything and complained that she had to help me clean. She told me that I was working too slowly. All this while she found time to be at a standstill and gossip with Carolina in the kitchen.

To date, only three people are scheduled for the graveyard shift: the AM, the cook, and a person at the register. An additional person has to be scheduled.

On Dec. 16-17, Yazmin informed me that my drawer was exactly $2 short. She said that Nayeli, the incoming AM, said that I did not have to repay the missing money and that it would serve as a warning. Next time, I would have to pay it. However, the policy for verifying drawers was not followed.

During my shift on Dec. 31-Jan.1, the same scenario occurred. Angela took my drawer without me counting it. Then she had me use her drawer for the rest of the shift. Fausto had me count the money in Angela's drawer before I left. When I asked him to let me see the sales receipt for the drawer he said, "No, you have to count it and make sure there's $200 in the drawer." I found this bizarre the last few times that I have counted my drawer, those AMs have allowed me to see the receipt. I counted the money in the drawer three times and there was $200. I had $100.43. He counted the money and then exchanged a few bills. As he did that I saw that the receipt indicated that I had to have

about $100.43. However, Fausto claimed that I was short exactly $2 and that he would place the money in the smart safe.

In the time that I have worked at #7069, I have learned that a crewmember was made to pay $60 when her drawer was short that amount of money. She told me that she found it very strange because the shortage was exactly $60. However, the policy packet states: "No reimbursements are to be made by any employees by any employee [sic] without an investigation and authorization by ownership[.]"

On Dec. 11, I outright saw a crewmember attempt to pocket customer's money. She had come to my register at the drive-thru to assist me with something. She took the customer's money and leaned against the window on my left side. When I noticed that she was not giving me the money or trying to place it in the drawer, I peripherally focused on her. She was crumbling the bills and when they were disappearing into her left hand, I turned my head and pierced my vision on her. Under pressure, she placed the crumbled bills into the drawer. Minutes later, I was replaced on the register by another crewmember. That crewmember used *my* drawer.

That same evening I asked Josefina, the AM on duty, if I could speak with her in private. I told her what happened with the crewmember and the crumbled bills. She replied that management had complaints from other employees that their drawers were short every time that the same crewmember used their registers.

On Friday, Dec. 15, I ended my shift at 8:38 p.m. I punched out and grabbed my belongings. I asked Fausto, the AM on duty, that I wanted to purchase a box of cookies to take home. I paid $4.41. And as I waited for the cookies, I took the receipt from the register and asked Fausto if the receipt was mine. He said, "Yeah." I took a quick look and the receipt was for an "extra sauce packet" that totaled $.28. I became concerned with Fausto after that event, especially since he had taken my drawer to the back without me counting the money soon after I returned from my unpaid meal break at 6:16 p.m. I contacted Olivia about my concerns but to this day, she has not contacted me to address them.

All of these events are psychologically tasking.

The third complaint relates to working hours. On Dec. 4th, Angela, an AM, confirmed what Olivia had informed me previously, that I would receive 3 weeks of training before beginning my 35-hour workweek from 11-7 p.m. My three weeks ended on Dec. 21. However since then, I have only been scheduled to work 2 days.

On Dec. 28, Nayeli asked me if I could trade the graveyard shift on Saturdays for the graveyard shift on Wednesdays. When I told her that I could not, Nayeli threatened me to reduce my workdays from 2 to 1 day a week. She, however, did not follow through on her threat; she scheduled me on Thursday from 11-5:30 p.m. and Saturday from 10 p.m.-4 a.m.

When Olivia hired me, I did not apply with the intention of working the graveyard shift. Olivia asked me if I could work the graveyard shift and I immediately told her that I had never worked the graveyard shift and that I did not know how I would fair working it. I said I would try it. Now I am informing you that our (family and I) sleep schedule is greatly impacted by me working the graveyard shift. I am now officially informing you that January 13 will be the last graveyard shift that I am working. I am available during the times I indicated on p. 14 of the orientation packet, which should be in my personnel file.

The fourth complaint relates to managers. Big Macs at all McDonald's locations must be the same. However in the time that I have worked at #7069, I have noticed that most AMs have their own set of rules. Of many, I will share two of them with you. One is the communication used with customers at the drive-thru. Are we supposed to ask, "Is that all," "Anything else," "Will that complete your order?" or what? Two is the "**** PICK LIST****" print-out (with a sticky back) when a customer "is parked." On Dec. 21st, Esther, a crewmember, explained that when a customer is parked we have to take the print-out to the manager who is bagging the order. A few hours later when Tasia, an AM, arrived, she told me that she did not want the print-out. I find these practices to be psychologically tasking: I learn routines only to unlearn them.

Some AMs have an abrasive and demeaning communication style with employees. One employee shared that some AMs would make her cry.

On Dec. 7 and 21, I worked part of my shift with Tasia. Both times she did not greet me nor did she use my name. Both times, she commanded, "Before you leave, make sure this [points], this [points], this [points], this [points], this [points], this [points], this [points], this [points], and this [points] is stocked." On Dec. 7, Tasia yelled at me in front of other employees for having used the scooper from the ice bin to scoop ice from a drink and having placed the scooper back in the bin with soda product on it. She said, "Don't do that, don't you know that it contaminates the ice!? Take it and wash it! And next time just redo the drink with no ice!" Obviously, I did not know.

Then one time Josefina had enough energy to ridicule me in front of other employees. On Dec. 23, she said in Spanish, "Can you believe it? Irma was giving out raw fries the other day." The "other day" was Dec. 11 and it was the first day that I worked the fry station. If I was giving out raw fries, then Josefina was not doing her job in training me correctly.

At McDonald's #7069, employees are not trained. They are forced to learn from their mistakes. I find this practice to be psychologically tasking.

The policy packet states: "Cosmetics must be subtle, moderate and within the natural color spectrum. This includes hair coloring and colognes...Tattoos must be covered at all times..." (p. 6). Tasia appearance is neither subtle, moderate and within the natural color spectrum; she looks more like the McDonald's mascot's wife. She also has

many tattoos that, if I have seen them, are obviously not covered up. The same can be said of Fausto and Olivia's tattoos.

The policy packet also states: "Fingernails are not to exceed one-quarter inch" (p. 6). Olivia, Josefina, and Angela have artificial nails that exceed that size.

Your policy packet further states: "[N]epotism is prohibited in the restaurant" (p. 11). On Dec. 28, an employee was scheduled to work until 7 p.m. but was also sent home early at 5 p.m. I overheard Sonia, an AM, and Melissa's conversation where Melissa was complaining that she was only scheduled to work from 4-8 p.m. Sonia said, "Do you want to stay until 10 p.m.?" Melissa agreed. In this case, one employee was sent home early so another employee could get more hours.

Nepotism also exits when not all managers and employees are scheduled to work the graveyard shift.

On Dec. 21 and Dec. 28, I witnessed how Erik, a cook, touched Jasmine, an employee. Both times, Jasmine jerked away when he touched her arm and back.

On Dec. 24, Fausto, an AM, and Erik, a cook, kept using the word 'verga' in Spanish which translates to 'dick' in English. They used "verga" so times throughout the night that it could be heard in the front where I was working that night. It became uncomfortable. That same night they kept referring to each other as "Papa" and "Papi" in Spanish which translate to "Dad/Pop" and "Daddy" in English. I mention this because they are not the only ones to used such terms with each other.

Olivia calls me "mi'ja" in Spanish, which translates to "sweet daughter," Angela calls me "madre" in Spanish, which translates to "mother" and she also calls me "mother" in English. Nayeli calls me "madre." I only have one mother and she is the only person who can call me "mi'ja." I do not have any children and as such expect no one to call me mother in any language. My name is Irma and when at work, I expect to be called Irma and nothing else.

The fifth complaint relates to the physical environment of #7069. On Dec. 2nd, two employees and I saw a roach on top of the drive-thru cooler. On Dec. 9th, two employees and I saw another roach inside the receipt dispenser on top of the drive-thru cooler.

The constantly greasy floors are a huge concern for me. I have almost slipped twice and both times it has been by the frying stations. The first time was when there was grease on the floor and the second was when the grease was mopped and the floors were wet. Since floors in employee workspaces are always being mopped, the floors are always wet. These are hazardous situations for employees.

In the time I have worked at #7069, I have witnessed the drive-thru cooler and the drive-thru ice container leak. It has been about three weeks that the brewed-coffee makers

5

in drive-thru continually leak onto the floor. This too is a hazardous situation for employees.

The policy packet states: "Wash your hands at least once every hour." Employees do not have access to a hand-washing sink in close proximity to work stations. The only option where there is "McD Foaming Antibacterial Handsoap" is the restroom located about 30 feet away (p. 26).

On Dec. 31-Jan. 1, for the first time since I started, an AM, has instructed me to use the blue gloves when handling hash browns at the fryer. The AM was Angela. However, Angela did not explain to "[a]lways wash [my] hands before going to work at the grill or fryer stations and putting on blue disposable gloves." (p. 25).

The above complaints related to breaks, cash drawers, hours, managers and the physical environment at #7069 are those that I want to address here.

In my career, I have never seen a more dedicated and hard-working group of employees as the individuals at #7069. Given the long history of my complaints, so it seems from conversations with employees, I am led to conclude that you authorize these practices. I hope that you accept the complaints as a way to improve the working conditions at your McDonald's #7069.

If you have any questions, please let me know.


Sincerely Your Employee,



Irma Rosas